# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

In Re

WADE REED HALL and
TERI LYN HALL,

**Bankruptcy Case
No. 09-40700-JDP**

**Debtors.**

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

Stephen A. Meikle, ADVANTAGE LEGAL SERVICES, Idaho Falls,
Idaho, Attorney for Debtors.

Charles Murphy, Boise, Idaho, Attorney for Chapter 13 Trustee
Kathleen McCallister.

## Introduction

After confirmation of Reed and Teri Hall's ("Debtors") chapter 13

plan,[1] and after approximately nine months of payments on that plan, Teri

_____

[1] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

MEMORANDUM OF DECISION - 1

Hall was awarded Social Security Disability Income ("SSDI") benefits

consisting of a lump sum of $44,377.50,[2] together with future payments of

$1,133.00 per month[3] for an indefinite period. Docket Nos. 44, 52. In light

of this development, chapter 13 trustee Kathleen A. McCallister

("Trustee"), moved to modify Debtors' confirmed plan to capture all, or a

portion of, the SSDI award for distribution to Debtors' creditors. Docket

No. 48. Debtors objected to Trustee's motion. Docket No. 51.

The Court conducted a hearing concerning Trustee's motion on July

13, 2010, and took the issues under advisement. The Court has considered

the record and submissions of the parties, the arguments of counsel, as

well as the applicable law. This Memorandum constitutes the Court's

---

[2] $31,877.50 of the lump sum amount was granted to Teri Hall on her behalf. Mrs. Hall has two children from a prior marriage and was granted $6,250 in a lump sum award for each of those children. Together, the lump sum payments totaled $44,377.

[3] The monthly payment award includes $783 per month on Teri Hall's behalf and $175 per month on behalf of each of Mrs. Hall's children. Combined, the monthly payment equals $1,133.

MEMORANDUM OF DECISION - 2

findings of fact and conclusions of law, and resolves this contest.  Fed. R.

Bankr. P. 7052, 9014.

## Facts

Debtors filed a chapter 13 petition on May 13, 2009.  Docket No. 1.

Two days later, Debtors proposed a chapter 13 plan whereby $245 per

month would be paid to Trustee for a term not exceeding 60 months.

Docket No. 10.  Trustee recommended that the plan not be confirmed until

certain schedules were updated, including:  Schedule I, to reflect a higher

net income for Reed Hall; Schedule J; and Schedule B.  Docket No. 24.

Schedule I was amended by Debtors to reflect a net income of $3,756 for

Mr. Hall, an increase in $890.19 over Mr. Hall's income shown at filing.

Docket Nos. 1, 27.  At the same time, Teri Hall's net income was reduced

by $148.65, to $375.73, and the combined income for the Debtors was listed

as $5,780.07.[4]  Docket No. 27.  An amendment to Schedule J indicated that

---

[4] The combined income on Schedule I reflected the net income of each
spouse as well as domestic maintenance payments and a budgeted income tax
refund.

MEMORANDUM OF DECISION - 3

Debtors, adjusting for the updated Schedule I income and monthly

expenses, had a monthly net income of $308.38. *Id*. Debtors updated

Schedule B to include Teri Hall's pending, contingent SDDI claim, for an

"unknown" amount. Docket No. 26.

Debtors' chapter 13 plan was eventually confirmed on October 13,

2009. Docket No. 33. The confirmed plan requires that Debtors pay $359

per month to Trustee, and directs Debtors to immediately notify Trustee,

and to amend all appropriate schedules, upon resolution of Teri Hall's

SSDI claim. *Id*. Approximately six months after plan confirmation, the

SSDI claim was resolved. Debtors received $44,377.50 in lump sum

awards: a $31,877.50 lump sum award to Teri Hall, and two $6,250 lump

sum awards, one for each of Mrs. Hall's children. Docket No. 44. Under

the SSDI award, Teri Hall also began receiving monthly SSDI payments of

$783 for herself and $175 for each of her two children, for a total of $1,133

per month. Docket No. 48. Schedule C was concomitantly updated,

claiming the entire SSDI award as exempt. Docket No. 44.

MEMORANDUM OF DECISION - 4

Trustee moved to modify Debtors' confirmed plan on May 17, 2010.

Docket No. 48.  She asserted that both the lump sum awards and the

$1,133 in monthly benefits should be paid to Trustee to distribute through

the plan.  *Id*.  Debtors objected to Trustee's motion, and also submitted

further amended Schedules I and J.  Docket Nos. 51,  53.  While the

amended Schedule I no longer includes Teri Hall's employment income, it

includes the $1,133 monthly SSDI award.  *Id*.  Debtors' amended Schedule

I combined average monthly income is $6,537.34, an increase of $757.27

over the amount on the pre-confirmation Schedule I.  *See id*.  Their

amended Schedule J indicates average monthly expenses of $6,227.69, an

increase of $756 over the amount on the pre-confirmation Schedule J.[5]  *See*

*id*.  Therefore, the resulting Schedule J monthly net income is $309.65, only

$1.27 more per month than shown on the pre-confirmation Schedule J.  *See*

*id*.

---

[5] The increases on the amended Schedule J include $740 for additional
medical and dental expenses and $236 for private school expenses.  A reduction
in $220 for child care expenses was also included.

MEMORANDUM OF DECISION - 5

Since receipt of the $44,377.50 in lump sum awards, Debtors have, without Trustee's consent, spent all but approximately $15,000 of those funds.[6]  Docket No. 60.  Debtor Teri Hall testified at the hearing for this motion that all expenditures from the award were to pay post-confirmation debts, and that Debtors "kept track of" where the lump sum monies went.  Transcript of Hearing on Trustee's Motion to Modify Plan at 42:12, 44:50 (Jul. 13, 2010).  Trustee concedes that it is likely impractical  to recover the spent lump sum amounts.  *Id*. at 54:45.

///

---

[6]  After the motion hearing, Debtors filed an "Affidavit of Debtor Clarifying Testimony," on July 19, 2010.  In it, Teri Hall avers that the $15,000 includes the $12,500 lump sum amounts for her children and only $2,500 of her primary award.  Mrs. Hall's testimony at the July 13, 2010, hearing on this motion was that there was "approximately $15,000" of the primary $31,877.50 award remaining.  Transcript of Hearing on Trustee's Motion to Modify Plan at 45:50 (Jul. 13, 2010).  It is, of course, inappropriate to attempt to amend or "clarify" in-court witness testimony via a post-hearing affidavit, or by any other method that does not afford opposing parties an opportunity for cross-examination.  The affidavit need not be stricken in this case, though, since the Court's analysis, below, does not depend on the actual amount of lump sum monies remaining.

MEMORANDUM OF DECISION - 6

**Discussion**

As the moving party, Trustee bears the burden of showing sufficient facts to indicate that modification is warranted. *See* § 1329(a). One of the statutory reasons for which a plan may be modified is to increase the amount of payments under the plan. § 1329(a)(1). In this case, Trustee has demonstrated that Debtors received $44,377.50 in post-confirmation lump sum monies, and will receive $1,133 each month going forward. Neither the lump sum awards nor the monthly awards were considered at plan confirmation. Docket No. 33. Trustee has, therefore, met her burden of coming forward with adequate evidence that a modification of Debtors' plan to increase payments may be appropriate.

Debtors, however, argue that the confirmed plan should not be modified for three reasons. *See* Docket No. 59. First, Debtors contend that, because there is only a difference of $1.27 in the monthly net income between the pre-confirmation Schedule J amount and the post-SSDI-award Schedule J amount, there has not been a substantial change in Debtors'

MEMORANDUM OF DECISION - 7

ability to repay their creditors, and no modification should be ordered. *See id*. Debtors' argument assumes, of course, that a change in their ability to pay is a prerequisite for modification. *Id.* Second, Debtors assert that because the SSDI award is properly claimed exempt property, it should not be included as disposable income available to creditors. *Id*. Finally, Debtors argue that SSDI awards in particular, as benefits received under the Social Security Act, must be excluded from disposable income paid to creditors. *Id.* Debtors' latter two arguments are based on their assumption that the "disposable income" analysis under § 1325(b) used to measure confirmation of their original plan is also applicable to determining whether an SSDI award may be captured via a § 1329 modification.

Below, the Court addresses Debtors' "change-in-ability-to-pay" contention and the standards for § 1329 modifications in turn.

///

///

MEMORANDUM OF DECISION - 8

# I.

Where Code's language is plain, bankruptcy courts should, absent an absurd result, enforce the terms of the statute. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). Section 1329 provides: "[a]t any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim." § 1329(a). Contrary to Debtors' position, a post-confirmation change in a chapter 13 debtor's ability to pay payments under a confirmed plan is not, per the plain language of the Code, a prerequisite under § 1329 for a plan modification. *Powers v. Savage* (*In re Powers*), 202 B.R. 618, 621–22 (9th Cir. BAP 1996). As long as a request for modification satisfies the requirements of § 1329, the modification should be approved, even in the absence of a change in the debtor's ability to pay. *Id.* at 622; *McDonald v. Burgie* (*In re Burgie*), 239 B.R. 406, 409 (9th Cir. BAP 1999).

MEMORANDUM OF DECISION - 9

## II.

Another issue in this case is whether the disposable income requirements for confirmation under § 1325(b) should be applied by the Court to a proposed modified plan under § 1329.  If, as Debtors assert, § 1325(b) is incorporated into the plan modification requirements of           § 1329,  the Code's definition of "current monthly income" applies to determine Debtors' required plan payments.  § 1325(b)(2).   Because the definition of "current monthly income" in § 101(10A)(B) excludes "benefits received under the Social Security Act," Debtors argue that such benefits should not be subject to capture through Trustee's proposed           § 1329 modification.

Courts have differed over the answer to this question.  *See Sunahara v. Burchard* (*In re Sunahara*), 326 B.R. 768, 779–81 (9th Cir. BAP 2005) (providing an overview of courts and cases that have examined the interplay between § 1325(b) and § 1329).  Of course, the resolution of this issue begins with the statutory language of §§ 1329 and 1325(b).  Section

MEMORANDUM OF DECISION - 10

1329 sets forth the standards for chapter 13 plan modifications.  It provides

in relevant part that:

**Modification of plan after confirmation**

(a) At any time after confirmation of the plan but before the
completion of payments under such plan, the plan may be
modified, upon request of the debtor, the trustee, or the
holder of an allowed unsecured claim, to—
   (1)  increase or reduce the amount of payments on claims
   of a particular class provided for by the plan;
   * * *
(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the
   requirements of section 1325(a) of this title apply to any
   modification under subsection (a) of this section.
   (2) The plan as modified becomes the plan unless, after
   notice and a hearing, such modification is disapproved.

§ 1329(a),(b).

As can be seen, various other provisions of chapter 13 (*i.e.*,

§§ 1322(a), 1322(b), 1323(c), and 1325(a)) are expressly referenced in

§ 1329(b)(1), and are thereby effectively incorporated as plan modification

requirements.  While § 1325(b) is not expressly listed in § 1329(b)(1),

because § 1325(a) is referenced and begins:  "[e]xcept as provided in

MEMORANDUM OF DECISION - 11

subsection (b), the court shall confirm a plan if [certain conditions are met]," some courts have decided that the requirements of § 1325(b) should also apply to plan modifications. *See, e.g., In re Sounakhene*, 249 B.R. 801, 805 (Bankr. S.D. Cal. 2000) (recognizing competing views regarding the incorporation of § 1325(b)).

Many other courts, however, including most courts considering the issue in the Ninth Circuit, have preferred a plain meaning and language analysis of the interplay of §§ 1325(b) and 1329. *See In re Sunahara,* 326 B.R. at 774–75.[7]  It is their view that, since § 1329 does not expressly reference

---

[7] The tenor of Ninth Circuit courts' decisions has evolved over time.  In the past, some decisions found § 1325(b) implicitly incorporated into § 1329. *See, e.g., In re McKinney*, 191 B.R. 866 (Bankr. D. Or. 1996).  Others recognized that, while not expressly incorporated, the requirements of § 1325(b) might apply to § 1329 in some circumstances. *See, e.g., In re Burgie*, 239 B.R. at 409 (finding § 1325(b) applied where the bankruptcy court assumed trustee objected to plan confirmation); *In re DeFrehn*, 03.3 I.B.C.R. 174, 176 (Bankr. D. Idaho 2003) (finding § 1325(b) applies only if trustee or unsecured creditor objects to plan); *see also In re Sounakhene*, 249 B.R. at 805 (finding § 1325(b)'s underlying analysis might influence courts' discretion in modification cases).  Just before the 2005 Bankruptcy Code amendments, the BAP plainly held that § 1325(b) does not

MEMORANDUM OF DECISION - 12

§ 1325(b), courts may not imply that the § 1325(b) rules for determining

"disposable income" apply in  judging the propriety of post-confirmation

modifications.  *Id*. at 781.

The omission of § 1325(b) in § 1329(b)(1) has been also highlighted in

decisions from other circuits as well.  *Id*. at 775–79.

The Court concludes the plain language of the Code dictates the

outcome of this issue.  Section 1322(b) begins: "[s]ubject to subsections (a)

and (c) of this section, the plan may . . . ." § 1322(b).  If incorporation-by-

reference reasoning is valid, there would be no purpose for § 1329's

---

apply to § 1329 modifications.  *In re Sunahara*, 326 B.R. at 781.  In an apparent
modern trend, the majority of recent cases within the Ninth Circuit have
concluded that, because Congress failed to use the 2005 amendments to
incorporate § 1325(b) into § 1329, *Sunahara* should be followed, and the § 1325(b)
requirements do not apply to § 1329 modifications.  *See, e.g., Fridley v. Forsythe* (*In
re Fridley*), 380 B.R. 538, 543 (9th Cir. BAP 2007); *Pak v. eCast Settlement Corp.* (*In re
Pak*), 378 B.R. 257, 272 (9th Cir. BAP 2007); *In re Ewers*, 366 B.R. 139, 143 (Bankr.
D. Nev. 2007).  *See also In re Westing*, 2010 WL 2774829, at *3 n.8 (Bankr. D. Idaho
2010) (discussing that, while *Sunahara* does not incorporate § 1325(b) into § 1329,
the debtor's proposal must satisfy § 1325(a)(3)'s "good faith" requirement,
whereby the court may consider debtor's current income and expenses).

MEMORANDUM OF DECISION - 13

reference to § 1322(a).  According to Debtors, § 1325(a)'s reference to

§ 1325(b) supposedly manifests Congress' intent to incorporate § 1325(b)

into § 1329.  But following that reasoning, § 1322(b)'s reference to § 1322(a)

should be sufficient to have a similar effect.[8]  Likewise, § 1322(a) includes

the language:  "notwithstanding any other provision of this section, a plan

may . . . ."  § 1322(a)(4).  The reference to "other provision[s] of this

section" is arguably, per incorporation-by-reference reasoning, sufficient

to demonstrate Congress' intent that all subsections of § 1322, including

§ 1322(b), be read into § 1329 modifications.  And yet, Congress

specifically included both §§ 1322(a) and 1322(b) in § 1329's referencing of

applicable Code sections, while failing to include reference to § 1325(b).

§ 1329(b)(1).

---

[8]  Note the similarity between the language of § 1325(a) and § 1322(b).
"Except as provided in subsection (b), the court shall confirm a plan if . . . ."
§ 1325(a).  "Subject to subsections (a) and (c) of this section, the plan may . . . ."
§ 1322(b).

MEMORANDUM OF DECISION - 14

After considering these decisions, this Court concludes that, because the plain language of § 1329 does not include any reference to § 1325(b), even though § 1329 includes specific reference to several other Code sections, the requirements of § 1325(b) should not be applicable to § 1329 modifications. *See In re Sunahara*, 326 B.R. at 781. Congress did not express its intent that the provisions of § 1325(b) apply to modifications when § 1329 was first adopted. *See* H.R. REP. NO. 95-595, at 431 (1977). Moreover, § 1329 was not amended to include the provisions of § 1325(b) when the "disposable income" test was significantly amended by Congress in 1984. *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333. When the Bankruptcy Code was significantly amended in 2005, and though there was a considerable existing division in the case law on this issue, § 1329, while amended in other ways, was not changed by Congress to include any reference to § 1325(b). Bankruptcy Abuse Prevention and Consumer Protection Act of

MEMORANDUM OF DECISION - 15

2005, Pub. L. No. 109-8, § 102, 119 Stat. 23, 34–35 (codified as amended at

11 U.S.C. § 1329).  If Congress' omission of § 1325(b) throughout the years

has been an oversight, and it, instead, intended that the disposable income

and other requirements of § 1325(b) apply to plan modifications, Congress,

and not the courts, must clarify its intent.  *In re Sunahara*, 326 B.R. at 781.

### III.

The standards for chapter 13 modifications are contained in the

language of § 1329, and whether a modification should be approved is

subject to the bankruptcy judge's discretion and good judgment in

reviewing the motion to modify.  *See In re Powers*, 202 B.R. at 622.

Modification analysis under § 1329 is an equitable one.  *Max

Recovery, Inc. v. Than* (*In re Than*), 215 B.R. 430, 438 (9th Cir. BAP 1997).  By

reference to § 1325(a), § 1329 incorporates the good faith requirement of

§ 1325(a)(3), which requires an analysis of whether a plan proponent took

into account all militating factors and considered the totality of

MEMORANDUM OF DECISION - 16

circumstances.  *See  Fridley v. Forsythe* (*In re Fridley*), 380 B.R. 538, 543 (9th

Cir. BAP 2007) (quoting *Goeb v. Heid* (*In re Goeb*), 675 F.2d 1386, 1390–91

(9th Cir. 1982)).  A debtor's income and expenses may be considered when

evaluating the totality of circumstances under the good faith modification

analysis.  *In re Westing*, 2010 WL 2774829, at *3 n.8 (Bankr. D. Idaho 2010).

Trustee contends that, considering Debtors' receipt of SSDI benefits,

their plan should be modified to require payments of $1,492 per month.

Docket No. 48.  Such a payment would include the $359 per month paid

under the current plan plus the entire $1,133 monthly SSDI award received

by Debtors.  *Id*.  Trustee's request, however, does not recognize that, at the

time of confirmation of Debtors' plan, Teri Hall was earning $375.73 per

month from her employment.  Docket No. 27.  Per Debtors' most recent

Schedule I, Teri Hall, due to her disability, is no longer employed.  Docket

No. 52.

MEMORANDUM OF DECISION - 17

Social security disability payments are intended to supplement or replace lost income. *In re DeFrehn*, 03.3 I.B.C.R. 174, 176 (Bankr. D. Idaho 2003). Requiring Debtors to pay $359 per month as provided under the confirmed plan, which was based in part on Teri Hall's employment income, while also capturing the entire amount of Debtors' income-substitute SSDI award would be unrealistic and inequitable.

At the same time, allowing Debtors to accrue income, rather than to apply that income to their plan payments, would constitute a windfall, which is a likewise inequitable result. Social security disability payments, while serving as an income substitute, are intended to provide for a claimant's basic needs. *In re DeFrehn*, 03.3 I.B.C.R. at 176. Those benefits are not subject to distribution to creditors by a trustee in a liquidation case. 42 U.S.C. § 407. *Crawford v. Gould*, 56 F.3d 1162, 1166 (9th Cir. 1995) (finding that § 407 is designed to protect Social Security benefits from the reach of creditors). Such a limitation, however, does not prevent debtors

MEMORANDUM OF DECISION - 18

from applying an SSDI award to current expenditures, such as food,

shelter, transportation, and other necessities.  *See Hagel v. Drummond* (*In re*

*Hagel*), 184 B.R. 793, 798 (9th Cir. BAP 1995); *In re DeFrehn*, 03.3 I.B.C.R. at

176.

Application of SSDI benefits to a debtor's basic needs will offset

non-SSDI income that is currently being used for such purposes.  This

excess non-SSDI income should then be distributed to creditors and,

considering the totality of the circumstances in this case, would provide a

more equitable outcome than if such income were shielded from a trustee

through application to current expenditures while SSDI income was held

beyond the creditors' reach.  In other words, based upon the record, the

Court finds that Debtors' SSDI awards should be applied to payment of

their current expenditures, and any excess in Debtors' non-SSDI income

should be devoted to plan payments.

MEMORANDUM OF DECISION - 19

The evidence shows that Debtors' necessary living expenses have increased since plan confirmation, shadowing increases in Debtors' income. The most recent, post-SSDI-award calculations indicate that Debtors, even if dedicating all monthly SSDI awards to their necessary expenditures, would only have an additional $1.27 per month in non-SSDI income available to creditors beyond their present, confirmed plan payment. Practically all non-SSDI income that has been freed by the receipt of the SSDI awards has been consumed by an increase in Debtors' expenditures. The Court, in the exercise of its discretion, will not require modification of Debtors' plan to capture $1.27 more per month.

However, in addition to the monthly benefits, Debtors also received lump sum payments totaling $44,377.50, approximately $15,000 of which remains. The primary factor in determining whether to include a lump sum payment in a chapter 13 modification is not the payment's lump sum nature, but rather the payment's purpose. *Profit v. Savage* (*In re Profit*), 283

MEMORANDUM OF DECISION - 20

B.R 567, 574 (9th Cir. BAP 2002); *In re Burgie*, 239 B.R. at 411; *In re DeFrehn*,

03.3 I.B.C.R. at 176.  If a payment was intended to be income, or, more

precisely, an income-substitute, as opposed to payment of a single asset,

the payment may be included in a modified plan.  *See In re Burgie*, 239 B.R.

at 411.  SSDI payments, which are intended to supplement or replace

income lost due to a physical or mental impairment, qualify as income or

income-substitutes.  *In re DeFrehn*, 03.3 I.B.C.R. at 176.  Dependent SSDI

benefits are intended, also as income-substitutes, to provide for disabled

wage earners' dependents.  *See Jimenez v. Weinberger*, 417 U.S. 628, 634

(1974).  In fairness to their creditors, this Court should consider all sources

of Debtors' income, including those of dependents residing in the

household, to evaluate the propriety of a proposed modification to their

confirmed plan.  Debtors' dependent SSDI benefits are, therefore,

appropriate for inclusion in the chapter 13 modification calculation.

MEMORANDUM OF DECISION - 21

Debtors and two of their dependents, all of whom are members of Debtors' household, received lump sum SSDI benefits on account of Teri Hall's disability. While $44,377.50 in lump sum payments were awarded, only approximately $15,000 remains in Debtors' household. The other approximately $29,377.50 was spent by Debtors, reportedly to pay post-confirmation debts.

As a practical matter, Debtors' expenditure of funds from the lump sum awards without notice to, or permission of, Trustee placed those funds beyond Trustee's reach. That conduct may constitute "cause" for dismissal of Debtors' chapter 13 case under § 1307(c), but Trustee has not requested that relief. Trustee's motion suggests that the Court ought to modify the confirmed plan to recapture these expenditures in the form of future payments, but that approach is unworkable and, frankly, naive. That Debtors spent these funds is not evidence that they can pay a concomitant amount to creditors through a modified plan going forward.

MEMORANDUM OF DECISION - 22

However, taking into consideration the totality of the circumstances, the Court finds it equitable to require that Debtors include the entire remaining amount of any SSDI lump sum payments in a plan modification.  Debtors are ordered to cooperate with Trustee in fixing the exact amount of the lump sum awards remaining, and Trustee's motion to modify will be granted to the extent that Debtors will be required to immediately pay over those funds to Trustee for distribution to creditors under their chapter 13 plan.

## Conclusion

Trustee's motion to modify the plan will be granted in part.  While Debtors' monthly payment amount will not be changed, any funds remaining from any of the lump sum SSDI payments must be turned over to Trustee for distribution under the plan.   Counsel for Debtors and Trustee shall cooperate in the prompt submission of an order consistent with this decision.

MEMORANDUM OF DECISION - 23

Dated:  August 31, 2010

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 24